Paul S. Kennedy, Esq. - 024501985
**KENNEDY LAW FIRM**
**503 Union Avenue**
**Brielle, New Jersey 08730**
**(732) 528-1880**
**Co-counsel for Plaintiff**
pkennedy@kennedyesq.net
**File #:19-0688**
**RICHARD F. HUSSEY, ESQ.**
**800 S.E. 3rd Avenue, 4th Floor**
**Fort Lauderdale, FL 33316**
**FBN 370088**
**Co-counsel for Plaintiff**
rick@husseylaw.com

| | |
|---|---|
| Plaintiff(s),<br><br>CAMILLE SWAIN, D.O.,<br><br>vs.<br><br>Defendant(s),<br><br>IJKG Opco LLC d/b/a CarePoint Health-Bayonne Medical Center, and Antonios J. Tsompanidis, D.O. | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY<br>Civil Action No. 2:20-cv-00222-JXN-JBC<br><br>**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>*Returnable March 18, 2024* |

Plaintiff, Camille Swain, D.O., by and through her undersigned attorneys, and pursuant to Rules 7(b) and 56 of the Federal Rules of Civil Procedure and Local Rules 7.1, 56.1(a), and 78.1, files this Brief in Opposition to Defendants' Motion for Summary Judgment, and as grounds therefor, states the following:

# TABLE OF CONTENTS

Page

1.   Table of Authorities …………………………………………  4

2.   Summary of Argument……………………………….................  5

Problems with Defendants' Statement of Relevant Facts……….  7

Argument in Opposition to Defendants' Motion……………….. 9

**I.   THE SUMMARY JUDGMENT STANDARD: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND PLAINTIFF'S MOTION GRANTED BECAUSE PLAINTIFF HAS ESTABLISHED EACH ELEMENT OF HER CLAIMS AND DEFENDANTS HAVE FAILED TO PRODUCE CREDIBLE MATERIAL FACTS REFUTING THEM…………..9**

**II.   DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S NJLAD CLAIM, AND DEFENDANTS RECENTLY RAISED PRETEXTUAL CLAIM OF PLAINTIFF'S FAILURE TO SATISFY REASONABLE CONDITIONS FOR LEAVE LACKS MERIT………9**

**A.   Defendants' adverse employment action first occurred when Plaintiff was forced to take a mandatory minimum two month leave of absence against her wishes…………………………………….10**

**B.   Defendants failed to grant Plaintiff an appropriate accommodation, and the adverse employment decision of compelling a leave cannot be deemed an accommodation…………………………..14**

**III.   DEFENDANTS CONSIDERED PLAINTIFF'S TEMPORARY MENTAL DISABILITY TO BE A**

**"SERIOUS HEALTH CONDITION" THAT REQUIRED A LEAVE, AND THEREFORE SHE WAS ELIGIBLE FOR FMLA PROTECTIONS…..15**

**IV. THE PARTIES EMPLOYMENT AGREEMENT WAS IN FULL FORCE AND EFFECT WHEN PLAINTIFF WAS FORCED TO TAKE A LEAVE OF ABSENCE, AND THE LEAVE EXTENDED THE TERM OF THE EMPLOYMENT AGREEMENT BEYOND THE DATE ON WHICH SHE WAS TERMINATED…………………….…..17**

**A.    The Employment Agreement had not expired but was in full force and effect on April 30, 2019, when the involuntary leave was imposed, and the mandatory two month leave extended the contract by two months…………………………………………………...17**

**B.    Plaintiff had the enforceable right to receive notice and an opportunity to improve or cure any claimed deficiencies in her performance……………17**

**C.    Plaintiff performed all duties required of her under the contract until she was compelled to go on leave by Defendants…………………………………..18**

**D.    Plaintiff concedes that Dr. T was not a signatory to the parties' employment agreement………………19**

Conclusion …………………………………………………………19

Certificate of Service …………………………………………………20

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

*Betts v. Summit Oaks Hospital,* 687 F.App'x. 206, 207

     (3d Cir. 2017……………………………………………..10

*Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).10

*Diaz-Paredes v. Whole Foods Market Group, Inc.,*

     *No. A-2391-11 T4* (N.J.Sup.Ct.App.Div. 6/6/13)………..11

*Grande v. St. Clare's Health System,* 230 N.J. 1, 17-18 (2017)..11

*Jones v. School District of Philadelphia,* 198 F.3d 403,

     411 (3d Cir. 1999)……………………………………….10

*Tourtellotte v. Eli Lilly & Co.,* 636 F.App'x. 831, 842

     (3d Cir. 2016)…………………………………………10,15

## <u>Rules</u>

Fed. R. Civ. P. 56(d)…………………………………………….17

## <u>SUMMARY OF ARGUMENT</u>

Defendants' Motion for Summary Judgment should be denied and Plaintiff's Motion granted because Plaintiff has established proof of each element of her claims. Defendants' Memorandum does not credibly refute the material facts supporting Plaintiff's claim of liability on all three counts of her Complaint. No reasonable jury could come to any conclusion but that the evidence clearly establishes violations of the NJLAD, the FMLA, and the parties' Employment Agreement. In further support of this argument, Plaintiff incorporates herein her Brief in Support of Motion for Summary Judgment. [DE101-1]

Defendants' claim that Plaintiff was terminated for failure to satisfy BMC's reasonable conditions with respect to her medical leave lacks merit. Defendants' sole stated reason for termination was Plaintiff's alleged failure to be approved by Absolve for FMLA leave. The recent pretextual basis of a purported pattern of similar failures is irrelevant, immaterial, and inadmissible pursuant to Federal Rule of Evidence 403. Moreover, Defendants did not raise Plaintiff's job performance – or lack thereof – as a defense in its Answer. [DE13]

Defendants' first adverse employment action occurred when she was forced to take a mandatory minimum two month leave of absence against her wishes. Defendants perceived the need for leave based upon Plaintiff's supervisors' perception she had temporary mental disability. However, Defendants failed to

5

provide a reasonable accommodation requested by Plaintiff that would have allowed her to continue to work. Then they failed to comply with the requirements of the FMLA after mandating an involuntary leave of absence. Defendants failed to inform her that obtaining approval for FMLA leave was a condition precedent for leave approval or reinstatement thereafter.

Plaintiff satisfied the conditions established by Dr. T when he mandated the leave, and she obtained appropriate certifications of her ability to return to work at the leave's conclusion. Plaintiff made multiple attempts to avail herself of the assistance of BMC's HR department and Absolve in completing the paperwork required for the mandated leave, but she received none. Despite Absolve accepting her preference for communication by email, neither Absolve nor the HR department made any attempt - until it was too late - to communicate by that means. Many emails were exchanged among Absolve, the HR department, and Plaintiff's supervisors claiming Plaintiff's deficiency in completing the paperwork, but none were shared with her - until it was too late.

Plaintiff's three supervisors, all medical doctors, the Director of Graduate Medical Education, the Director of the Surgical Residency Program, and the Assistant Director of the Surgical Residency Program, all believed she had a "serious health condition." Their failure to accommodate and the subsequent failure to reinstate are clear violations of the NJLAD. Ultimately, Absolve denied Plaintiff

FMLA benefits; but, Plaintiff's failure to obtain medical certification of a medical necessity for leave was due to Defendants' failure to comply with its obligations as an employer, as set forth in the Code of Federal Regulations. See Brief in Support of Plaintiff's Motion for Summary Judgment, DE 101-1, pages 18-22.

Defendants' claim that the Employment Agreement expired prior to Plaintiff's termination is incorrect. The mandatory two month leave of absence extended the contract by two months; and, if it did not, Defendants would not have "terminated" Plaintiff on July 12, 2019. If the contract truly was no longer in effect, they would have chosen not to renew instead.

## PROBLEMS WITH DEFENDANTS' STATEMENT OF RELEVANT FACTS

Defendants' claim that "Plaintiff had an extensively documented history of substandard performance" [P's Memo, p.1] is irrelevant, immaterial, and inadmissible under Rule 403 of the Federal Rules of Evidence. It was not raised as a defense in Defendants' Answer. The sole stated cause for termination was the failure of Absolve to approve Plaintiff's leave under the FMLA. During the four years of Plaintiff's residency predating the forced leave, she was evaluated at least every month; and, the Defendants have cherry-picked a few below average evaluations to attempt to create a pretext for a lawful termination. However, Plaintiff's performance was no worse than several other residents [Dr. T DP, pp. 53-

54]; and, she ultimately completed the program and became a credit to the institution [Dr. S DP, pp. 94-95; Dr. T DP, pp. 44-45].

At the time the leave of absence was mandated, the decision to require Plaintiff to repeat the fourth year remained in flux. Dr. T testified that by April 5, 2019, no determination had been made about requiring Plaintiff to repeat the fourth year. [Dr. T DP, pp. 50-51] No such requirement was mentioned in the April 5, 2019 letter requiring remediation. [DE103-17] And, Dr. T testified that of the 19 residents in 2019, at least 6 or 7, and maybe more, were in remediation, like Plaintiff, and at least one of those was a fifth year resident. [Dr. T DP, p. 54] Nor was the possibility of repeating the fourth year discussed in the meeting of April 30, 2019, or the follow-up email from Dr. T of May 1, 2019. [DE103-20] Finally, Dr. T testified that if Plaintiff had returned from leave on July 1, 2019, as expected, she would have returned as a PGY-4, completed the missed two months; and then on September 1, 2019, she would have been promoted to a PGY-5. [Dr. T DP, p. 38; pp. 55-56]

The claim Defendants accommodated her perceived mental disability in April 2019 by agreeing to a two month leave of absence is sorely misplaced. Plaintiff did not seek or welcome that so-called "accommodation." [Dr. T DP, p. 28] Once forced on leave, Plaintiff satisfied the conditions imposed by Dr. T by contacting the HR department for direction in completing necessary paperwork, and she obtained medical clearance certifying her ability to return to work at the leave's conclusion.

Dr. T testified the clearance Plaintiff obtained from Dr. Haas satisfied his condition for a certification of fitness to return to work from a medical doctor. [Dr. T DP, pp. 47-48; DE103-36, pp. 2-6]

Any failure to properly or timely submit or complete claim paperwork for leave approval was due to the HR department and Absolve's failure to respond to her multiple requests for assistance or to communicate with her properly by email. She was not required to treat "with an appropriately licensed medical professional," as claimed in Defendants' Memo [p. 2]; but she did treat with the healthcare provider identified on the form completed by Absolve's intake coordinator [DE103-25].

## ARGUMENT IN OPPOSITION TO DEFENDANTS' MOTION

**I. THE SUMMARY JUDGMENT STANDARD: DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED AND PLAINTIFF'S MOTION GRANTED BECAUSE PLAINTIFF HAS ESTABLISHED EACH ELEMENT OF HER CLAIMS AND DEFENDANTS HAVE FAILED TO PRODUCE CREDIBLE MATERIAL FACTS REFUTING THEM.**

Defendants have correctly described the summary judgment standard in the section of their memo. However, they have failed to set forth any legal or factual argument supporting the claim that Plaintiff has failed to make the required showing of each essential element of her claims.

**II. DEFENDANTS ARE NOT ENTITLED TO JUDGMENT ON PLAINTIFF'S NJLAD CLAIM, AND DEFENDANTS RECENTLY RAISED PRETEXTUAL CLAIM OF PLAINTIFF'S FAILURE TO SATISFY REASONABLE CONDITIONS FOR LEAVE LACKS MERIT.**

**A.    Defendants' adverse employment action first occurred when Plaintiff was forced to take a mandatory minimum two month leave of absence against her wishes.**

Plaintiff had a perceived disability when forced to go on a mandatory minimum two month leave of absence on April 30, 2019. This was an adverse employment action that delayed her career as a surgeon and led to the more drastic adverse action of termination. Defendants could have easily provided an accommodation by allowing counseling while she continued to work and reassigning her to the Hoboken rotation, to which she had originally been assigned.

Claims brought pursuant to NJLAD are assessed in the same way as claims under Title VII. *Tourtellotte v. Eli Lilly & Co.,* 636 F.App'x. 831, 842 (3d Cir. 2016). As in a Title VII claim, an "adverse action" is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different job responsibilities, or a decision causing a significant change in benefits." *Betts v. Summit Oaks Hospital,* 687 F.App'x. 206, 207 (3d Cir. 2017), quoting *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). "[S]omething less than a discharge could be an adverse employment action." *Jones v. School District of Philadelphia,* 198 F.3d 403, 411 (3d Cir. 1999).

As required under the cases cited by Defendants in this section of their Memo, Plaintiff has demonstrated (1) the employer perceived her to have a mental disability;

(2) she remained qualified to perform the essential functions of her job as a surgical resident and was performing at a level that met the employer's expectations, as attested by the program director, Dr. Simpson; and nevertheless, (3) Defendants forced her to take a two month leave of absence when she was ten months into the fourth year of her five year residency program. These undisputed material facts establish a *prima facie* disability discrimination claim pursuant to *Grande v. St. Clare's Health System,* 230 N.J. 1, 17-18 (2017), and the other cases cited by Defendants.

Because Plaintiff established a *prima facie* case, Defendants must produce evidence of the reasonableness of their adverse action or a non-discriminatory reason for its action. Defendants have failed to do so.

> 1.    Plaintiff had a perceived disability at the time of the first adverse action imposing an involuntary leave and that disability played a role in her later termination.

There is no question that Defendants perceived Plaintiff to have a temporary mental disability at the time that she was forced to go on leave. Otherwise, the leave mandated by three doctors and counseling required during leave would not have been compelled by Defendants. That Defendants terminated her after her temporary mental disability resolved makes the Defendants' conduct all the more egregious.

Defendants cited *Diaz-Paredes v. Whole Foods Market Group, Inc., No. A-2391-11 T4* (N.J.Sup.Ct.App.Div. 6/6/13) for the proposition that an employee may

not pursue a disability claim when the perceived disability has resolved at the time of the termination. However, in that case, the plaintiff had failed to raise the perceived disability issue at the trial court level and "plaintiff did not present any evidence at all that defendants perceived her as disabled or that she actually was disabled." *Id.,* at 7. In the instant case, Plaintiff had a perceived mental disability at the time she was compelled to take a leave.

> 2. Record evidence supports Plaintiff's contention that her disability motivated Defendants' decision to terminate her.

Again, Defendants perceived Plaintiff to have a temporary mental disability. They required an evaluation on March 28, 2019; and, that evaluation by Ms. Levine resulted in a return to work certification without restrictions. Nonetheless, a month later on April 30, 2019, Defendants mandated the involuntory minimum two month leave of absence based on the same perceived temporary mental disability. However, on this occasion, they did not obtain a mental health professional's evaluation and opinion about the Plaintiff's fitness or ability to work before mandating an involuntary leave. In fact, Dr. Simpson believed Plaintiff did not need to be removed from her duties as a surgical resident, but he went along with Dr. T's decision. The Defendants' later termination is akin to the fruit of the poisonous tree. Plaintiff would not have been on leave but for the Defendants' perception she had a temporary

mental disability, and she would not have been terminated but for the Defendants'
failure to comply with an employer's obligations under the FMLA thereafter.

> 3. Defendants' claim Plaintiff failed to satisfy
> conditions Defendants imposed in connection with the
> medical leave is false, and any suggestion that Plaintiff's
> termination was due to her poor performance is pretextual.

The conditions Defendants imposed after mandating the leave of absence are
delineated in Dr. T's May 1, 2019 email [DE9-6]. Those conditions included (1)
clearance from a psychiatrist or psychologist attesting to Plaintiff's ability to return
to full duty at a 100% and able to handle the responsibilities of the surgical residency;
(2) speak with program director Dr. Simpson on a weekly basis to update him on
Plaintiff's status; and (3) reach out to the HR department to complete appropriate
paperwork for the leave.

Plaintiff fulfilled all of those obligations. The failure to obtain FMLA leave
approval from AbSolve lies with Defendants.

Dr. T affirmed that counseling from someone other than a medical doctor was
acceptable. [Dr. T DP, pp. 37-38] Dr. T also testified that the Attending Physician
Statement and Return to Work Form submitted by Plaintiff from Dr. Haas complied
with his requirement for an appropriate certification of ability to return to work. [Dr.
T DP, pp. 47-48]

As for the other two conditions, there is no dispute that Plaintiff contacted HR
to complete the appropriate paperwork and that she remained in regular

communication with Dr. Simpson during the leave.  Contrary to the argument made by Defendants, Plaintiff was not required to seek treatment from a medical professional. Plaintiff made multiple attempts to avail herself of the assistance of HR personnel and Absolve in completing the FMLA paperwork. She advised her superiors she would be staying with her parents in Tallahassee, Florida, during the leave and that future communications with her should be by email. Absolve agreed to communicate by email but instead sent mail to a Hoboken address where Plaintiff could not obtain it.

> **B.    Defendants failed to grant Plaintiff an appropriate accommodation, and the adverse employment decision of compelling a leave cannot be deemed an accommodation.**

Contrary to Defendants' contention, Plaintiff did **not** seek a leave of absence or agree she wanted or needed it. She was told "[y]ou will take two months minimum leave of absence." [P DP, p. 175, line 21] She "didn't have a choice in the matter." [P DP, p. 175, lines 10-12] The mandatory leave cannot be deemed an accommodation when it was not requested or welcomed by Plaintiff. Instead, she wished to continue working; and, the accommodation she sought was a return to Hoboken Hospital as originally scheduled. She also agreed to Dr. Simpson's suggestion of counseling, but that would have been while she continued to work.

Defendants could have easily accommodated Plaintiff. Since she was originally scheduled for that rotation, it should have been no problem to reassign her

to Hoboken. The late switch to St. Joe's in mid-April 2019 occurred only because another resident at St. Joe's had been recently fired. And, when Plaintiff went on leave, Defendants placed another resident at St. Joe's. Thus, all four elements required to prevail on a claim of failure to reasonably accommodate a disability under the NJLAD have been satisfied. *Tourtellotte,* 636 F. App'x at 849.

### III. DEFENDANTS CONSIDERED PLAINTIFF'S TEMPORARY MENTAL DISABILITY TO BE A "SERIOUS HEALTH CONDITION" THAT REQUIRED A LEAVE, AND THEREFORE SHE WAS ELIGIBLE FOR FMLA PROTECTIONS.

Plaintiff's three supervisors, all physicians, were so concerned about her mental health, they compelled a minimum two month leave of absence. Therefore, there should be no question Plaintiff was at least perceived to have a "serious health condition." Those supervisors directed her to HR for direction on completing paperwork for FMLA leave, making eligibility for FMLA leave a non-issue. HR directed her to AbSolve, and its intake coordinator placed "Mary Mills, LPC" in the box on the DS-1 form identifying Plaintiff's healthcare provider during leave. Once compelled to go on leave on April 30, 2019, she saw Mary Mills three days later on May 3 and received continuous treatment from this healthcare provider throughout the leave. Dr. T and Dr. Simpson knew Plaintiff was being treated by Mary Mills, and neither raised an objection.

Mary Mills is a licensed professional counselor (LPC), a licensed marital and family therapist (LMFT), and Colorado Addiction Counselor III (CACIII). She was identified on the DS-1 form completed by AbSolve's intake coordinator as the healthcare provider who would treat Plaintiff. If, as Defendants argue, she was not qualified as a healthcare provider under the Code of Federal Regulations, the fault lies with Defendants' agent, AbSolve. Naming an "unqualified" healthcare provider (if true), failing to provide information employers are required to provide, failing to provide assistance, failing to provide timely notice of deficiencies, failing to describe with specificity those deficiencies and how to address them, and failing to advise Plaintiff of the consequences of failing to correct identified deficiencies would all constitute interference with Plaintiff's FMLA claim. The subsequent firing constitutes retaliation.

More importantly, the argument in this section of Defendants' Memo totally misses the point. Defendants failed to provide the information to Plaintiff required by the FMLA; and, they failed to timely notify her by email of any deficiencies in her FMLA leave application. They failed to provide any assistance. Had they done so, Plaintiff would have had the opportunity to cure those deficiencies.

Finally, AbSolve's opinion Mary Mills does not qualify as a healthcare provider should not be accepted as gospel. Defendants did not raise ineligibility due to Ms. Mills' qualifications as a defense in their Answer [DE13]. If this truly is an issue,

Plaintiff requests time to conduct discovery regarding whether Ms. Mills would qualify. Federal Rule of Civil Procedure 56(d).

### IV.    THE PARTIES EMPLOYMENT AGREEMENT WAS IN FULL FORCE AND EFFECT WHEN PLAINTIFF WAS FORCED TO TAKE A LEAVE OF ABSENCE, AND THE LEAVE EXTENDED THE TERM OF THE EMPLOYMENT AGREEMENT BEYOND THE DATE ON WHICH SHE WAS TERMINATED.

#### A.    The Employment Agreement had not expired but was in full force and effect on April 30, 2019, when the involuntary leave was imposed, and the mandatory two month leave extended the contract by two months.

The placement of Plaintiff on leave for two months extended the parties' agreement by two months. Dr. T testified that if Plaintiff returned from leave on July 1, 2019, as expected, she would complete the last two months of her fourth year and be promoted to her fifth year on September 1, 2019. [Dr. T DP, p. 38] If the contract had truly expired and was no longer in effect, Defendants would not have "terminated" Plaintiff as a surgical resident. Defendants could have done nothing or elected not to renew.

#### B.    Plaintiff had the enforceable right to receive notice and an opportunity to improve or cure any claimed deficiencies in her performance.

Defendants have argued that BMC had the right to modify the contract at any time. Following the logic of this argument, BMC could have and did compel a leave of absence and thereby extended the contract by two months. But, the contract also

contained the provisions requiring notice and an opportunity to cure or improve any performance deficiencies claimed by the employer. Every contractual provision must be given effect, and the contract read and interpreted as a whole. Thus, BMC was required to give Plaintiff timely notice of any deficiencies in her leave application and reasonable time to cure.

The *Falco* case cited by Defendants on page 21 of their Memo is inapplicable. The plaintiff in that case did not have an express contract, and the employee handbook she relied upon contained a disclaimer negating the creation of an enforceable employment contract. Of course, Plaintiff herein did have an express contract. Defendants cannot choose to ignore some provisions and give them no effect by claiming the unilateral right to modify or eliminate inconvenient provisions.

> **C.    Plaintiff performed all duties required of her under the contract until she was compelled to go on leave by Defendants.**

Plaintiff had performed all her contractual duties at the time she was compelled to go on leave. In fact, Dr. Simpson did not feel she needed to be relieved from her responsibilities as a surgical resident. He went along with Dr. T's decision. But, even so, the decision to compel a leave had nothing to do with any claimed deficient performance.

This brief has already addressed the few cherry-picked below average evaluations, the fact so many other residents were in the same remediation boat as Plaintiff, and Plaintiff's compliance with Dr. T's conditions for the leave as set forth in his May 1, 2019 email. Again, the sole reason advanced for termination was AbSolve's decision not to approve FMLA leave. No performance issues were cited, and the recently raised arguments regarding performance issues is a desperate grasp for a legitimate basis for termination.

### D.  Plaintiff concedes that Dr. T was not a signatory to the parties' employment agreement.

It is true that Dr. T was not a signatory to the Employment Agreement. Arguably, when he terminated Plaintiff, he did so as the agent of BMC. Yet, under the NJLAD and the FMLA, his decision to wrongfully terminate may make him liable, along with the employer.

### <u>CONCLUSION</u>

The Defendants' claims of entitlement to summary judgment lack merit. Plaintiff has established proof of each element of her three causes of action. Defendants have presented no credible material facts to refute those claims. Therefore, Defendants' Motion for Summary Judgment should be denied and Plaintiff's Motion granted.

Dated:  February 26, 2024              PAUL S. KENNEDY, ESQ.
                                       Co-Counsel for Plaintiff
                                       503 Union Avenue

Brielle, New Jersey 08730
 (732) 528-1880
pkennedy@kennedyesq.net

BY: */s/ Paul S. Kennedy*
    PAUL S. KENNEDY        And

RICHARD F. HUSSEY, P.A.
Attorney for Plaintiff
800 S.E. 3rd Avenue, 4th Floor
Ft. Lauderdale, FL 33316
(954) 462-7500; Fax (954) 520-7125
Florida Bar No. 370088
Primary: rick@husseylaw.com
Secondary: lynne@husseylaw.com

BY: */s/Richard F. Hussey*
    RICHARD F. HUSSEY

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 26, 2024, a true and correct copy of the foregoing was electronically filed and served via CM/ECF on all counsel or parties of record on the Service List below.

KENNEDY LAW FIRM
Attorneys for Plaintiff

BY: _*/s/ Paul S. Kennedy*___
    PAUL S. KENNEDY

## SERVICE LIST

Paul S. Kennedy, Esq.
KENNEDY LAW FIRM
503 Union Avenue
Brielle, New Jersey 08730
(732) 528-1880; (732) 528-1884 fax

Attorneys for Plaintiff
pkennedy@kennedyesq.net

Patrick D. Soundy, Esq.
Scott M. Wich, Esq.
Robert A. Wiesen, Esq.
CLIFTON BUDD & DeMARIA, LLP
350 Fifth Avenue, 61st Floor
New York, New York 10118
(212) 687-7410
Attorneys for Defendants
pdsoundy@cbdm.com
smwich@cbdm.com
rawiesen@cbdm.com

Richard F. Hussey, Esq.
RICHARD F. HUSSEY, P.A.
800 S.E. 3rd Avenue, 4th Floor
Fort Lauderdale, FL 33316
(954) 462-7500; (954) 520-7125 fax
Co-Counsel for Plaintiff
rick@husseylaw.com