**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| CAMILLE SWAIN, | : | |
| | : | |
| Plaintiff, | : | **Civil Action No. 20-222 (JXN) (JBC)** |
| | : | |
| v. | : | **OPINION** |
| | : | |
| IJKG OPCO LLC, *d/b/a* CAREPOINT | : | |
| HEALTH - BAYONNE MEDICAL | : | |
| CENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | : | |

**NEALS**, District Judge:

This matter comes before the Court on Camille Swain, D.O.'s ("Plaintiff") motion for summary judgment (ECF No. 101) and IJKG OPCO, LLC d/b/a CarePoint Health-Bayonne Medical Center's ("CarePoint") and Antonios J. Tsompanidis' ("Dr. Tsompanidis") (together, "Defendants") cross-motion for summary judgment (ECF No. 102) pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1. Defendants opposed Plaintiff's motion (ECF No. 110) ("Defs.' Opp."), and Plaintiff replied (ECF No. 115) ("Pl.'s Reply"). Plaintiff opposed Defendants' cross-motion (ECF No. 109) ("Pl.'s Opp."), and Defendants replied (ECF No. 113) ("Defs.' Reply"). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331 and 1367(a). Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1441(a). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).

For the reasons set forth below, Plaintiff's motion for summary judgment (ECF No. 101) and Defendants' cross-motion for summary judgment (ECF No. 102) are **DENIED**. Plaintiff's request to take discovery under Fed. R. Civ. P. 56(d) is **GRANTED**. The parties shall file a

proposed Order within 10 days setting an expedited schedule for limited discovery regarding whether: (1) Mary Mills, LPC ("Mills") is a "healthcare provider" and (2) Plaintiff has a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*  Any party may at the conclusion of the supplemental discovery request leave to file a motion for summary judgment in accordance with the Court's Rules and Procedures.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On December 13, 2019, Plaintiff filed a complaint in New Jersey Superior Court alleging causes of action under: (1) New Jersey's Law Against Discrimination ("LAD"), N.J.S.A. 10:5-1, *et seq.* (Count One); (2) the FMLA (Count Two); and (3) common law breach of contract (Count Three) (ECF No. 1 at 6-33[1]) (the "Complaint").   On January 7, 2020, Defendants removed the action to this Court.   (ECF No. 1 at 1-4).   Plaintiff alleges in pertinent part that Defendants "unlawfully terminated" her employment in violation of the parties' employment agreement, the FMLA, and LAD because Plaintiff "express[ed] concerns regarding some of" CarePoint's "policies and practices" and CarePoint "believe[ed] [] Plaintiff suffered from a temporary mental disability. . . ."  (Compl. ¶¶ 1-4, 26).  The relevant facts follow.

On July 1, 2015, Plaintiff began working for CarePoint "as a surgical resident."   (Pl.'s Statement of Undisputed Material Facts (ECF No. 101-9) ("PSOF")[2]  ¶ 1; Defs.' Resp. Statement of Undisputed Material Facts (ECF No. 112) ("DRSOF")[3] ¶ 1).   On June 30, 2018, Plaintiff and CarePoint "entered into a written Employment Agreement for Residential Training in General Surgery as a Fourth Year Surgical Resident" ("Pl.'s Employment Agreement") (*see* PSOF ¶ 2; DRSOF ¶ 2), which covered the period of July 1, 2018, to June 30, 2019.  (Compl. at 18).

---

[1] The Court refers to the ECF page numbers throughout this Opinion.
[2] For brevity, all citations to the parties' Rule 56.1 statements incorporate the evidentiary citations contained therein.
[3] The Court cites Defendant's Amended Rule 56.1 statement (ECF No. 112), which amends only Defendant's previous response to Plaintiff's Statement of Undisputed Material Fact ¶ 19.  (ECF No. 111).

In March 2019, Plaintiff "experienced a series of personal tragedies that caused her to experience emotional distress."  (Defs.' Statement of Undisputed Material Facts (ECF No. 104) ("DSOF") ¶ 78 (internal quotation marks omitted); Plaintiff's Resp. Statement of Undisputed Material Facts and Supplemental Statement of Undisputed Material Facts (ECF No. 109-1) ("PRSOF") ¶ 78).  In April 2019, "Plaintiff expressed concerns to her supervisors" concerning "residents . . . work[ing] more than the 80 hours per week" allowed.  (PSOF ¶ 9; DRSOF ¶ 9).

On April 15, 2019, Plaintiff told Dr. Tsompanidis that "she did not feel that" St. Joe's Hospital ("St. Joe's") was "a supportive program, that they might be violating work-hour rules, [and] that some of the attendings are rough with the residents. . . ."  (PRSOF ¶ 189; Defs.' Resp. Statement to Pl.'s Suppl. Statement of Undisputed Material Facts (ECF No. 114) ("DRSOSF") ¶ 189); (Portions of Dr. Tsompanidis' September 29, 2021's deposition (ECF No. 103-5) ("Dr. T's Dep.") at T56:3-16).  Because Plaintiff "had some anxiety about going to St. Joe's[,]" she "requested an accommodation" to "continue with the rotation at Hoboken Hospital" ("Hoboken"), instead of reassignment to St. Joe's.  (PSOF ¶ 12; DRSOF ¶ 12); (Pl.'s March 31, 2022 deposition (ECF No. 103-4) ("Pl.'s Dep.") at T169:16-25); (DSOF ¶ 95 (internal quotation marks omitted); PRSOF ¶ 95) (internal quotation marks omitted).

Plaintiff also "discussed her mental state with" Thomas Simpson, M.D. ("Dr. Simpson") and "expressed that a lot of horrible things happened all at once in a very short period of time and [that] [Plaintiff] had never felt like this before."  (DSOF ¶ 92 (internal quotation marks omitted); PRSOF ¶ 92).  At the time, Dr. Simpson believed Plaintiff "was safe to continue" working, "was not suicidal[,]" and "did not feel that" Plaintiff "had to be removed from her role as a surgical resident. . . ."  (PSOF ¶ 11; DRSOF ¶ 11); (Thomas Simpson, M.D.'s May 3, 2022 deposition (ECF No. 101-3) at T19:1-3, 12-17).

On April 30, 2019, Plaintiff met Dr. Tsompanidis, Dr. Simpson, and "Assistant Program Director, Dr. Moszczynski" who collectively told Plaintiff that she was "to take a minimum of two months leave of absence and get counseling[,]" and would return on July 1, 2019 (the "April 30 Meeting").  (PSOF ¶ 13; DRSOF ¶ 13); (Pl.'s Dep. at T172:11-16; T175:15-21; T180:7-13).  On May 1, 2019, Dr. Tsompanidis sent Plaintiff a "confirming email" regarding "her requirement to take a two-month leave of absence" (the "May 1 Email").  (PSOF ¶ 15; DRSOF ¶ 15).

On May 3, 2019, Plaintiff "had a remote meeting with" Mills, a "Licensed Professional Counselor" and "Licensed Marriage and Family Therapist. . . ."  (DSOF ¶ 119; PRSOF ¶ 119).  On May 6, 2019, Plaintiff contacted CarePoint's third-party administrator, AbSolve ("AbSolve"), and "provided the [FMLA] information requested by its Intake Specialist, Denise Carek" ("Carek").  (PSOF ¶ 21; DRSOF ¶ 21).  Carek "completed the application for FMLA leave while Plaintiff was on the phone," and Plaintiff informed Carek that her "healthcare provider during the leave would be" Mills.  (PSOF ¶ 22; DRSOF ¶ 22); (Pl.'s Dep. at T200:21-T201:1).

On May 6, 2019, Carek emailed Yasinah N. Elamin ("Elamin"), "CarePoint's Benefits Manager," stating Plaintiff "requested continuous FMLA medical leave beginning" May 1, 2019.  (DSOF ¶¶ 101, 128; PRSOF ¶¶ 101, 128).  On May 6, 2019, "Plaintiff received" a copy of Carek's internal email to Dr. Nazir confirming Plaintiff's leave of absence "Intake forms were successfully completed and that" Plaintiff "is on an official FMLA absence."  (PSOF ¶ 23 (internal quotation marks omitted); DRSOF ¶ 23).[4]

On July 1, 2019, "Plaintiff provided" Defendants with Mills' June 30, 2019 letter "certifying to her fitness to return to work without limitation."  (PSOF ¶ 37; DRSOF ¶ 37).  Mills also attached a "completed [] Attending Physician's Statement – Psychiatric Conditions form and

---

[4] Defendants misquote Carek's email.  (*See* ECF No. 103-23 at 1).  The email reads in relevant part Plaintiff's "leave of absence Intake was successfully completed" and Plaintiff "is on an official FMLA absence."  (*Ibid.*).

Part B of the DS-1 form, . . . a Medical Certificate, and a USDOL certification" (with Mills' July 30, 2019 letter, the "July 1 Letter").  (DSOF ¶ 153 (internal quotation marks omitted); PRSOF ¶ 153).  On July 3, 2019, Wesley Zimmerman ("Zimmerman"), AbSolve's representative, internally responded that Mills "does not fall under the umbrella of an acceptable provider for" FMLA, and that if Plaintiff "only treated with" Mills, "she will not be eligible for" FMLA benefits.  (DSOF ¶¶ 157, 159; PRSOF ¶¶ 157, 159); (ECF No. 103-34 at 3).

On July 5, 2019, AbSolve informed Plaintiff that the "medical forms certifying her ability to return to work must be completed by a physician, RN or NP, and that" the July 1 Letter "was not sufficient."  (PSOF ¶ 38; DRSOF ¶ 38).  "On July 11, 2019, Plaintiff met with Dr. Edward V. Haas" ("Dr. Haas"), "a psychiatrist, for an evaluation" who "completed an Attending Physician Statement and Return to Work Form" ("Dr. Haas' Physician Statement") certifying "Plaintiff's fitness to return to work. . . ."  (PSOF ¶ 39; DRSOF ¶ 39).  Dr. Haas' Physician Statement "cleared Plaintiff to return to work, without any restrictions" and "anticipated [Plaintiff's] return to work" to be July 15, 2019.  (DSOF ¶ 174; PRSOF ¶ 174).

On July 11, 2019, Purna Iyer ("Iyer"), "CarePoint's Direct[or] of Human Resources," notified Plaintiff that "her failure to provide appropriate medical documentation would lead to her termination if not submitted" by July 12, 2019.  (DSOF ¶¶ 146, 170; PRSOF ¶¶ 146, 170).  That evening, Plaintiff emailed Dr. Haas' Physician Statement to Iyer.  (DSOF ¶ 171; PRSOF ¶ 171).

On July 12, 2019, AbSolve informed Plaintiff that Dr. Haas' Physician Statement "did not support her request for leave."  (DSOF ¶ 175; PRSOF ¶ 175).  Further, that Plaintiff's "request for leave under the FMLA was denied because the medical certification form does not support the definition of a serious health condition."  (PSOF ¶ 40 (internal quotation marks and brackets omitted); DRSOF ¶ 40).  CarePoint's HR Director emailed Plaintiff that same day stating that she

was "terminated effective immediately" because Plaintiff's "FMLA claim has been denied by AbSolve." (PSOF ¶ 42 (internal quotation marks and brackets omitted); DRSOF ¶ 42).

On January 30, 2024, Plaintiff and Defendants each filed motions for summary judgment. On February 26, 2024, the parties filed opposition. On March 4, 2024, the parties replied. This matter is now ripe for consideration.

## II.   <u>LEGAL STANDARD</u>

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted). There can be "no genuine [dispute] as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Accordingly, the court must "determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358

F.3d 241, 247 (3d Cir. 2004) (citation omitted).  Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted).  Courts concurrently resolve cross-motions for summary judgment.  *See Lawrence v. City of Philadelphia,* 527 F.3d 299, 310 (3d Cir. 2008) (citation omitted).  In doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion.  Fed. R. Civ. P. 56; *Lawrence,* 527 F.3d at 310.

## III.   <u>DISCUSSION</u>

### A.   <u>Summary Judgment is Denied on the LAD Discrimination Claim</u>

Plaintiff's first cause of action is for discriminatory discharge based on Plaintiff's disability or perceived disability.  (Compl. ¶¶ 23-30).  New Jersey's LAD "prohibit[s] any unlawful discrimination against any person because such person is . . . disabled. . . ." N.J.S.A. § 10:5-4.1.[5] Under the LAD, it is unlawful for an employer "to deny to an otherwise qualified person with a disability the opportunity to obtain or maintain employment" because she is disabled.  *Id.* at 10:5-29.1; *see also Grande v. Saint Clare's Health Sys.,* 230 N.J. 1, 18 (2017) ("[E]mployee who is perceived" to be disabled "is protected just as someone who actually" is) (citations omitted).

Discrimination claims under the LAD are analyzed pursuant to a "modified framework" of the "three-step burden-shifting test articulated by the United States Supreme Court" in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).  *Grande,* 230 N.J. at 17 (citations omitted); *see also Ferren v. Foulke Mgmt. Corp.,* No. 15-3721, 2017 WL 634511, at *4 (D.N.J. Feb. 16, 2017).  "To establish a *prima facie* case of disability discrimination for discriminatory discharge," Plaintiff "must demonstrate that:" (1) "she has or is perceived to have a disability" within the meaning of the LAD; (2) "she was otherwise qualified to perform the essential functions of the job, with or

---

[5] The LAD "refers to handicap, but defines handicap as a disability."  *Stewart v. Cnty. of Salem,* 274 F. Supp. 3d 254, 259 n.2 (D.N.J. 2017) (internal quotation marks and citations omitted).

without reasonable accommodation by" Defendants; (3) "she experienced an adverse employment action;" and (4) Defendant "sought someone else to perform the same work. . . ." *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 848 (3d Cir. 2016).[6]

If Plaintiff makes out "a *prima facie* case, the burden of production shifts to" Defendants to provide "some legitimate, non-discriminatory reason for" their actions. *Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 668 (3d Cir. 1999) (internal quotation marks and citations omitted). If Defendants produce[] such a reason, the burden then shifts back to" Plaintiff "to prove that" Defendants' "nonretaliatory or nondiscriminatory explanation is merely a pretext for the discrimination. . . ." *Tourtellotte*, 636 F. App'x at 842 (citations omitted). To survive summary judgment, Plaintiff "must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve" Defendants' articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a "motivating or determinative cause of" Defendants' action. *Id.* at 842 (internal quotation marks and citation omitted). To do so, Plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" Defendants' "proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that" Defendant "did not act for the asserted nondiscriminatory reasons." *Id.* at 848 (internal quotation marks, brackets, and citation omitted).

Here, while Plaintiff made out a *prima facie* case, neither party is entitled summary judgment because genuine issues of material fact exist. The parties do not dispute prong two—

---

[6] In her brief, Plaintiff primarily argues disability discrimination in her leave of absence, however, Plaintiff alleges in in Count One that "In violation of New Jersey's LAD, Defendants unlawfully terminated Plaintiff…as a result of [CarePoint's] belief that Plaintiff suffered from a temporary mental disability…." (Compl. ¶ 26). And that Defendants "violated the LAD by failing to provide reasonable accommodations for Plaintiff's perceived disability." (*Id.* ¶ 26). The Court analyzes both aspects of the claim under the appropriate standard. *See Tourtellotte*, 636 F. App'x at 848 ("The specific elements [of] a *prima facie* case of disability discrimination vary to some extent, like all employment discrimination claims, depending on the specific cause of action.") (citing *Victor v. State*, 203 *N.J.* 383, 141-42(2010)).

whether Plaintiff was qualified to perform the essential functions of the surgical resident role.[7] Further, it is undisputed that Defendants assigned Plaintiff's duties at St. Joe's to a different surgical resident (prong four).  (PSOF ¶ 51; DRSOF ¶ 51).  Therefore, the Court proceeds to analyze prongs: (1) whether Plaintiff had a disability within the meaning of the LAD; and (3) whether she suffered an adverse employment action; as well as the parties' respective evidence.

### 1.    Plaintiff was Disabled or Perceived to be Disabled in April 2019

To prove a disability under the LAD, Plaintiff need only show a "mental, psychological, or developmental disability which prevents the normal exercise of any bodily or mental functions[,]" such as depression.  *Fasano v. Federal Reserve Bank of New* York, 457 F.3d 274, 289 (3d Cir. 2005) (citation omitted); *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 956-57 (3d Cir. 1996).  Also, through Defendants' "perce[ption] [] or belie[f]" that Plaintiff was disabled. *Dennis v. Cnty. of Atl. Cnty.*, 863 F. Supp. 2d 372, 378 (D.N.J. 2012) (citation omitted)).

While Defendants direct the Court to Plaintiff's July 12, 2019 termination as the operative date (*compare* Defs.' Opp. at 13-14; *and* ECF No. 105 ("Defs.' Br.") at 12-13), Plaintiff argues she was "disabled" in April 2019, when Defendants purportedly required that she take a two-month leave of absence.  (Pl.'s Br. at 17-18).  Indeed, Defendants point to nothing in the record to show Plaintiff was not "disabled" before July 12, 2019.  (*See, gen.* Defs.' Opp, Br., and Reply).

In April 2019, Plaintiff shared with Defendants her personal and professional concerns that caused her "emotional distress" and accepted Dr. Simpson's suggestion that she take counseling. (PSOF ¶¶ 9-12; DRSOF ¶¶ 9-12); (DSOF ¶¶ 78, 92, 95; DRSOSF ¶ 189; PRSOF ¶¶ 78, 92, 95, 189).  At the April 30 Meeting, Plaintiff further learned that she "had to take a minimum of two

---

[7] Defendants argue Plaintiff "concedes she was unable to perform her duties as a resident" under the FMLA claim and not the LAD claim.  (*Compare* Defs.' Opp. at 25; *and* Defs.' Br. at 23) (citing DSOF ¶¶ 92-95).  While summary judgment on the FMLA claim is denied on other grounds, the Court notes Plaintiff disputes most of these assertions and admits only that she "discussed her mental state with Dr. Simpson" on April 27, 2019.  (PRSOF ¶¶ 92-95).

months leave of absence" and get counseling.  (PSOF ¶ 13; DRSOF ¶ 13); (Pl.'s Dep. at T172:11-16; T175:15-21).  Moreover, Plaintiff's supervisors purportedly directed that Plaintiff take a leave of absence because "they were concerned" with her "emotional distress[.]" (Pl.'s Dep. at T172:11-13).  Because Plaintiff was "disabled" or "perceived" to be disabled at least as of April 2019, the Court accordingly finds the record establishes prong one.

Defendants contend "there is no dispute that, _at the time the challenged termination took effect on July 12, 2019_, Plaintiff was not 'disabled' and suffered from no qualifying impairment that would entitle her to the protections of the N.J. LAD."  (Defs.' Opp. at 13).  The Court disagrees.  There is no dispute that Dr. Haas' July 11, 2019 Physician Statement certified "Plaintiff's fitness to return to work as a Fourth Year Surgical Resident without restrictions." (PSOF ¶ 39; DRSOF ¶ 39).  And that Plaintiff's "adjustment disorder with depressed mood" had "resolved" and Dr. Haas "did not recommend further treatment."  (DSOF ¶¶ 172-73; PRSOF ¶¶ 172-73) (internal quotation marks and brackets omitted).  However, these facts do not prove Plaintiff was not "disabled" on July 12, 2019.

Defendants point to nothing to suggest Plaintiff cannot establish the LAD claim because of Dr. Haas' Physician Statement.  Further, Defendants provide no authority to conclude Plaintiff no longer had an LAD disability because Dr. Haas treated her.  The Court also disagrees that "the record is uncontroverted that any 'perception' by CarePoint or its administrators concerning Plaintiff's work limitations, . . . was resolved prior to her termination" by Dr. Haas' Physician Statement.  (Defs.' Opp. at 14).  There is nothing in the record to support such an assertion.  Moreover, Defendants' internal emails from June 11, 2019, show Plaintiff's supervisors believed Plaintiff required further treatment.  (ECF No. 103-38 (the "July 11 Emails") at 1-3).  Indeed,

Plaintiff's supervisors did not believe Plaintiff's treatment was sufficient because Dr. Haas saw Plaintiff just once.  (July 11 Emails at 1-3).

Further, Defendants' reliance on *Diaz-Paredes v. Whole Foods Market Grp., Inc.*, is unpersuasive.  While the court there considered plaintiff's physician's note in finding plaintiff was not disabled, the court was further persuaded by plaintiff not "request[ing] an accommodation of any type" and the record showing plaintiff's "employers had no reason to perceive her as suffering from a disability."  2013 WL 2435297, at *3 (N.J. Super. Ct. App. Div. June 6, 2013).[8]  Moreover, plaintiff's claim on a perceived disability theory was not "considered at th[e] time" by the trial court.  *Id.* at *3.

In short, *Diaz-Paredes* does not stand for the proposition that Dr. Haas' Physician Statement alone is sufficient to defeat the LAD claim.  And unlike in *Diaz-Paredes*, Plaintiff here "requested an accommodation" to "continue with the rotation at" Hoboken instead of reassignment to St. Joe's.  (PSOF ¶ 12; DRSOF ¶ 12); (Pl.'s Dep. at T169:16-25).  Plaintiff's LAD claim is further based in part on Defendants perceiving Plaintiff to have a disability.  (Compl. ¶¶ 24, 26).

### 2.   Whether Plaintiff Suffered an Adverse Employment Action Based on Her Disability is in Dispute

An adverse employment action must be "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment."  *Lauto v. Dover Pub. Sch. Dist.*, No. 21-18246, 2022 WL 3646573, at *6 (D.N.J. Aug. 24, 2022) (internal quotation marks and citations omitted).  Here, whether Plaintiff suffered an adverse employment action based on her disability is a genuine dispute of material fact.

Plaintiff argues "Defendants took the adverse employment action of forcing [her] to take a leave [of absence] and [] terminating her because of her temporary mental disability."  (Pl.'s Br.

---

[8] Defendants do not fully quote *Diaz-Paredes*.  (Defs.' Opp. at 14).

at 26).  Defendants contend "Plaintiff's feelings about [her] leave are immaterial" because the record demonstrates Plaintiff "initiated the interactive process that resulted in her leave" when she told Defendants of her private and professional struggles.  (Defs.' Reply at 7).  The Court disagrees.

Defendants assert "both Plaintiff and CarePoint administrators agreed" Plaintiff "would be granted a two-month leave of absence" at the April 30 Meeting.  (DSOF ¶ 98).  In disputing this factual assertion, Plaintiff states "Defendants mandated that she take a two-month minimum leave of absence."  (PRSOF ¶ 98).  Defendants in turn dispute that they "required" or "compelled" Plaintiff to take a two-month leave of absence.  (PSOF ¶¶ 13, 32; DRSOF ¶¶ 13, 32).  Further, Defendants dispute Plaintiff's assertion that "Dr. T testified that Plaintiff did not ask for leave." (PRSOF ¶ 184; DRSOSF ¶ 184).  During the following colloquy, however, Dr. Tsompanidis testified as follows:

> Q.     Isn't it true that [Plaintiff] did not ask for a leave of absence?
>
> A.     She did not ask for the leave of absence.  However, when you can't perform your job duty, it is imperative that you be taken off service and then decide from that point what to do.

(Portions of Dr. Tsompanidis' September 29, 2021's deposition (ECF No. 109-3) at T28:1-6).  Dr. Tsompanidis also testified that he and Plaintiff's supervisors "agreed" that they would "grant [Plaintiff] the time to get the counseling and help that she needed."  (*Id.* at T28:7-14).  However, this is disputed by Plaintiff's deposition testimony.

Plaintiff testified Defendants told her that she "had to take a minimum of two months leave of absence[,]" which she was "really shocked about" because she "hadn't asked for any time off[;]" reiterated that Defendants "mandated" that she take the leave; and stated that Defendants told her, "You are going to take two months" off.  (Pl.'s Dep. at T172:11-T174:14).  She further testified that the leave of absence "wasn't voiced to [Plaintiff] as an option."  (*Id.* at T176:3-9).

In reviewing Dr. Tsompanidis's May 1 Email that confirmed Plaintiff's "requirement to take a two-month leave of absence" (*see* PSOF ¶ 15; DRSOF ¶ 15), Dr. Tsompanidis wrote that "it was felt that [Plaintiff] should take a **minimum of 2 months** leave of absence. . . ." (May 1 Email at 1). Thus, there is a factual dispute as to whether the "parties together identified an appropriate accommodation—a leave of absence" as Defendants contend. (Defs.' Br. at 18).

On summary judgment, "a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence is to be believed and all justifiable inferences are to be drawn in his favor." *Marino*, 358 F.3d at 247 (internal quotation marks and citation omitted); *see also*, *Brooks v. Kyler*, 204 F.3d 102, 105 n.5 (3d Cir. 2000).

Despite Defendants' contentions, Plaintiff has succeeded in producing evidence from which a jury could conclude Defendants required Plaintiff to take the leave of absence and used their compelled leave of absence as a pretext to ultimately terminate Plaintiff because of her "disability" and, in so doing, took an adverse employment action against her. And while Plaintiff considered the leave of absence to be "a good idea" because she believed she would benefit from counseling (*see* Pl.'s Dep. at T201:2-10), that same jury could conclude Defendants nonetheless required Plaintiff to take the leave. Thus, the Court disagrees that "whether Plaintiff [] requested a leave of absence is entirely immaterial" to Plaintiff's claims. (DRSOSF ¶ 184). *See Boles v. Wal-Mart Stores, Inc.*, 650 F. App'x 125, 128 (3d Cir. 2016) ("[T]aking a disability/medical leave is protected by the NJLAD.") (internal quotation marks and citations omitted).

In so holding, the Court finds Defendants' proffered case law to be unpersuasive (*see* Defs.' Opp. at 16-17). The case law is factually distinguishable as it did not involve an employee's purported obligation to take a leave of absence after her employer learned of the employee's disability. *See Oguejiofo v. Bank of Tokyo Mitsubishi UFJ Ltd.*, 704 F. App'x 164 (3d Cir. 2017)

13

(Asserting plaintiff's reassignment was the result of plaintiff's protected class); *Belfort v. Morgan Props., LLC*, No. 16-5207, 2018 WL 3201787 (D.N.J. June 29, 2018) (Whether plaintiff was terminated due to plaintiff's complaints of a hostile work environment).  Similarly, Defendants' additional case law did not involve LAD claims.  *See Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005) (Discrimination claim under the ADEA and Pennsylvania state law); *Cooper v. Thomas Jefferson Univ. Hosp.*, 743 F. App'x 499 (3d Cir. 2018) (Race discrimination claim under 42 U.S.C. § 1981).  Accordingly, the motions for summary judgment are denied.

**B.**     **Summary Judgment is Denied on the LAD Failure to Accommodate Claim**

Plaintiff argues "Defendants could have accommodated her by allowing her to undergo counseling while she continued to work[,]" and/or "allowed her to return to the Hoboken rotation. . . ."  (Pl.'s Br. at 17-18).  In opposition, Defendants argue that this claim fails because they provided Plaintiff with the accommodation—the leave of absence—regardless of this not being Plaintiff's preferred accommodation.  (Defs.' Opp. at 21-22).  The Court disagrees.

Under New Jersey's LAD, employees may "obtain all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because" of the employee's disability.  N.J.S.A. § 10:5-4.  The LAD defines a hospital as a "place of public accommodation[.]"  *Id.* § 10:5-5(I).  To prove a claim for failure to accommodate, Plaintiff must establish that she "(1) had a NJLAD handicap [i.e., a disability]; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap."  *Beese v. Meridian Health Sys., Inc.*, No. 11-7505, 2014 WL 3519124, at *10 (D.N.J. July 16, 2014) (citation omitted).

Here, summary judgment is denied on the LAD failure to accommodate claim for substantially the same reasons as the discrimination claim.  While the Court agrees Defendants

have "the ultimate discretion to choose between effective accommodations, and may choose the accommodation that is easier for it to provide" (*see* Defs.' Opp. at 18) (internal quotation marks, brackets, and citation omitted)), genuine issues of material fact exist regarding whether Plaintiff's leave of absence was in fact an accommodation, an adverse employment decision related to Plaintiff's disability, or a pretext to terminate Plaintiff.

At the outset, courts consider whether employers "granted Plaintiff's exact accommodation request" in deciding motions for summary judgment. *Pryce v. Tata Consultancy Servs./Tata Consultancy Servs. Ltd.*, No. 21-528, 2022 WL 17080744, at *6 (D.N.J. Nov. 18, 2022). Here, Defendants' assertion that "it is beyond dispute that Plaintiff accepted [the] accommodation and took the leave as offered" is unsupported by the record. (Defs.' Reply at 8). Seemingly, Defendants conflate Plaintiff's request for the Hoboken accommodation with their purported direction that Plaintiff take a leave of absence. (Defs.' Opp. at 17-18). In contrast, Plaintiff testified that the leave of absence was attributed to Defendants' concern for "patient safety issue[s]."[9] (Pl.'s Dep. at T173:23-T174:6). In short, there are disputed facts concerning whether Plaintiff's leave was in lieu of the Hoboken rotation.

Next, though the LAD "explicitly lists leaves of absence as an example of a reasonable accommodation" (*Schlater v. Arthritis*, No. 18-9778, 2020 WL 5793686, at *10 (D.N.J. Sept. 29, 2020) (internal quotation marks and citation omitted)), again, Plaintiff disputes Defendants' contention that the leave of absence was "an accommodation for [Plaintiff's] anxiety and depression condition. . . ." (DSOF ¶ 98; PRSOF ¶ 98). Thus, Defendants' argument that it is not

---

[9] Defendants did not raise an argument as to whether Plaintiff was otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation (prong two) in the summary judgment motion. *See Tourtellotte,* 636 F. App'x at 848.

liable because it chose between the Hoboken accommodation and the leave of absence accommodation is not supported in the record.  (*See* Defs.' Reply at 8).

Further, regarding an accommodation, employers must "make a reasonable accommodation to the limitations of an employee who is a person with a disability, unless the employer can demonstrate that the accommodation would impose an undue hardship."  *Stewart*, 274 F. Supp. 3d at 260 (internal quotation marks, brackets, and citations omitted).  Plaintiff contends that "Defendants have presented no evidence [that] Plaintiff's requested accommodation was infeasible or created a hardship."  (Pl.'s Reply at 21).  The Court agrees.  In viewing the facts in the light most favorable to the non-movant, material fact issues persist.  Accordingly, the Court denies the motions for summary judgment.

### C.   Summary Judgment is Denied on the FMLA and Breach of Contract Claims (Counts Two and Three)

Initially, it is undisputed that "Defendants' failed to inform Plaintiff that acceptance of the FMLA claim by" CarePoint's administrator "would be a condition precedent for reinstating Plaintiff."  (PSOF ¶ 34; DRSOF ¶ 34).[10]  It is similarly undisputed that "Defendants failed to reinstate Plaintiff to her previous position after receipt of proof of her fitness to work[,]" including "receipt of two certifications of Plaintiff's fitness to return to work. . . ."  (PSOF ¶¶ 35, 52; PSOF ¶¶ 35, 52).[11]  Nevertheless, this claim is not suitable for summary judgment.

In enacting the FMLA, Congress intended to "balance the demands of the workplace with the needs of families" and to allow "employees to take reasonable leave for medical reasons. . . ." 29 U.S.C. § 2601(b)(1)-(2).  The FMLA allows employees "to take up to 12 weeks of leave for medical reasons[,]" which "applies when an employee's own serious health condition makes the

---

[10] Defendants' citations to the record do not show this factual assertion is disputed under Fed. R. Civ. P. 56(c)(1)(A).
[11] Despite being cleared "to return to duty[,]" Plaintiff was not reinstated because she did not "satisfy the conditions CarePoint had imposed on [Plaintiff's] medical leave. . . ."  (DRSOF ¶ 35).

employee unable to perform the functions of his or her job." *Victorelli v. Shadyside Hosp.*, 128 F.3d 184, 186 (3d Cir. 1997) (internal quotation marks and citations omitted).  To that end, the FMLA "makes it unlawful for any employer to interfere with, restrain, or deny the exercise of . . . any right provided (*i.e.*, an inference claim)" and "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful (*i.e.*, a retaliation claim)." *Boyd v. Riggs Distler & Co.*, No. 20-14008, 2022 WL 17991037, at *4 (D.N.J. Dec. 29, 2022) (internal quotation marks and citations omitted).

Here, Plaintiff argues that the FMLA claim may be analyzed as an "interference" or "retaliation" claim.  (Pl.'s Br. at 21).  In support, Plaintiff contends Defendants failed to: (1) "provide Plaintiff with the required written Rights and Responsibility Notice," (2) "advise Plaintiff that the certification of medical necessity for leave was required, incomplete, or insufficient," and (3) "provide Plaintiff with an opportunity to cure any deficiencies."  (*Id.* at 29).  In opposition, Defendants contend they are entitled to summary judgment because no genuine issues of material fact exist.  (Defs.' Opp. at 23).  However, because genuine issues of material fact do exist, the Court denies the summary judgment motions and orders limited supplemental discovery under Federal Rule of Civil Procedure 56(d).

### 1. Limited Discovery is Proper to Determine Whether Plaintiff Had a "Serious Health Condition" to Receive FMLA Benefits

The Court may deny motions for summary judgment and grant a party "time to obtain affidavits or declarations or to take discovery" and "issue any other appropriate order."  Fed. R. Civ. P. 56(d)(1-3).  In carefully reviewing the record, as well as the parties' arguments, it is appropriate to deny the summary judgment motions and order limited supplemental discovery on this issue of whether Plaintiff had a serious health condition.

In citing *Bonkowski v. Oberg Indus., Inc.*, 787 F.3d 190, 195 (3d Cir. 2015), Defendants argue they are entitled to judgment on the FMLA claim because Plaintiff cannot prove she had a "serious health condition" to receive FMLA benefits because she treated with Mills, who is purportedly not an FMLA "healthcare provider[.]" (Defs.' Opp. at 23). Plaintiff does not dispute that she must first establish the existence of a "serious health condition[,]" but counters that because her supervisors "were so concerned about her mental health," there "should be no question Plaintiff was at least perceived to have a 'serious health condition.'" (Pl.'s Reply at 22). Alternatively, Plaintiff requests discovery as to "whether [] Mills would qualify" as a healthcare provider pursuant to Federal Rule of Civil Procedure 56(d) (*compare* Pl.'s Reply at 23-24; *and* Pl.'s Opp. at 16-17). Defendants oppose this request. (Defs.' Reply at 15). Limited supplemental discovery is warranted to determine: (1) whether Mills qualifies as a health care provider; and (2) whether Mills' diagnosis of Plaintiff qualifies as a serious health condition under the applicable Code of Federal Regulations.

A "serious health condition" is "an illness, injury, impairment or physical or mental condition" that requires "continuing treatment by a health care provider" such as a "[c]hronic condition" that: (i) requires "periodic visits (defined as at least twice a year) for treatment by a health care provider;" (ii) "[c]ontinues over an extended period of time (including recurring episodes of a single underlying condition);" and (3) "[m]ay cause episodic rather than a continuing period of incapacity. . . ." 29 C.F.R. §§ 825.102 and 825.115(c)(1)-(3). The Code of Federal Regulations provide that any "person determined by the Secretary to be capable of providing health care services[;]" "clinical psychologists[;]" and "[n]urse practitioners, . . . clinical social workers and physician assistants" are healthcare providers. 29 C.F.R. § 825.125(a), (b)(1)-(2). Health care providers also include anyone from "whom an employer or the employer's group health plan's

benefits manager will accept certification of the existence of a serious health condition to substantiate a claim for benefits. . . ."  *Id.* at § 825.125(b)(4).

Here, while the current record does not establish Mills is a healthcare provider (Defs.' Opp. at 24), the Court disagrees that "[t]here is no evidence that non-party AbSolve, CarePoint's benefits manager, would accept a certification from" Mills.  (*Id.* at 24-25).  Plaintiff testified that as part of her application for FMLA benefits, Plaintiff "provided the information requested by" Carek, AbSolve's Intake Specialist.  (PSOF ¶ 21; DRSOF ¶ 21).  As Carek "completed" Plaintiff's FMLA application, Plaintiff told Carek that her "healthcare provider during the leave would be" Mills.  (PSOF ¶ 22; DRSOF ¶ 22); (Pl.'s Dep. at T200:21-T201:1).  Then, when asked whether she needs to be treated by "a physician or can it be a therapist[,]" Carek told Plaintiff that "it can be either."  (Pl.'s Dep. at T200:14-17).  Carek then proceeded to obtain Mills' "office information" and confirm "her credentials" to add to the intake form.  (*Id.* at T200:21-T201:1).

Plaintiff further testified that because Defendants told her that "the reason for the leave of absence was to get counseling," she believed Mills was the most appropriate person because Mills, a therapist, provides counseling services.  (*Id.* at T201:2-23).  Thus, Plaintiff did not see a "doctor, psychiatrist or psychologist" because she was told she was to take a leave of absence to obtain counseling.  (*Id.* at T216:T16-T217:1).  It is also unclear on this record whether Mills would qualify as a healthcare provider under 29 C.F.R. § 825.125(a), (b)(1)-(2).  In other words, while Plaintiff confirmed with AbSolve's representative, Zimmerman, that she treated with Mills only and "did not receive treatment from a medical doctor," (*see* DSOF ¶ 161; PRSOF ¶ 161), fact issues exist regarding whether Mills' treatment is sufficient under the FMLA.

In sum, Defendants' base their motion for summary judgment, and their opposition to Plaintiff's motion, on the contention that Plaintiff cannot establish a "serious health condition"

(*compare* Defs.' Opp. at 23-26; *and* Defs.' Br. at 20-24).  The record is incomplete, and limited discovery as to whether Mills' treatment entitles Plaintiff to FMLA benefits is appropriate. Accordingly, the motions are denied.

### 2.     Genuine Issues of Material Fact Exist as to Counts Two and Three

Genuine issues of material fact exist regarding whether Defendants told Plaintiff that they and/or AbSolve required treatment by a psychiatrist or psychologist at the April 30 Meeting. (DSOF ¶ 100; PRSOF ¶ 100); (Pl.'s Dep. at T180:20-T181:4).  During his deposition, Dr. Tsompanidis testified that the April 30 Meeting was "the only place where" Defendants "advised" Plaintiff of the psychiatrist or psychologist requirement.  (Dr. T's Dep. at T37:5-8).  Moreover, though Dr. Tsompanidis opined that Plaintiff "must be evaluated by a psychiatrist" because a "physician understands the rigors of Residency and can adequately clear her to return without limitations" (*see* ECF No. 103-34 at 4), the FMLA does not require treatment by a psychiatrist to receive benefits.  *See* 29 C.F.R. §§ 825.102, 825.115(c)(1)-(3), and 825.125(a), (b)(1)-(2), (4).

The same is true of Plaintiff's breach of contact claim that relies in part on Defendants' failure "to communicate the need for medical certification of the need for leave" (Pl.'s Br. at 32), which Defendants dispute.  (Defs.' Opp. at 30).  The parties agree only that Defendants informed Plaintiff "she would need clearance to return to work. . . ."  (DSOF ¶ 99 (internal quotation marks and brackets omitted); PRSOF ¶ 99).  And while Elamin internally advised that Plaintiff's leave of absence was denied because she did not provide a medical certification (*see* DSOF ¶ 143; PRSOF ¶ 143), the parties agree only that Dr. Simpson told Plaintiff "that some unspecified paperwork necessary for the FMLA application" was missing.  (PSOF ¶ 28; DRSOF ¶ 28).

In further support of her breach of contact claim, Plaintiff argues her Employment Agreement does not permit her termination for issues surrounding the FMLA leave.  (Pl.'s Br. at

31).   While Defendants argue Plaintiff did not comply with the provisions of Plaintiff's Employment Agreement and was a substandard employee[12] (*see* Defs.' Br. at 30-31), the record shows Plaintiff was terminated for failing to justify her FMLA leave.  *See* (PSOF ¶ 42; DRSOF ¶ 42) (Plaintiff "received an email from" CarePoint's HR Director stating Plaintiff's "employment with CarePoint" was "terminated effective immediately" because Plaintiff's "FMLA claim has been denied by AbSolve.") (internal quotation marks omitted).

Indeed, Plaintiff asserts CarePoint "terminated Plaintiff because her FMLA claim was denied by AbSolve. . . ." (PSOF ¶ 3).  Defendants dispute this factual assertion and argue Plaintiff was terminated because she failed "to provide adequate proof that she met the conditions CarePoint had imposed on her medical leave of absence, including, . . . her failure to provide adequate proof that she had seen a psychiatrist during her two-month leave. . . ."  (DRSOF ¶ 3).  Defendants concede Plaintiff's "FMLA claim ha[d] been denied by AbSolve" and reiterate Plaintiff was terminated for issues surrounding her request for FMLA benefits.  (DRSOF ¶¶ 42, 44).  Finally, Plaintiff disputes Defendants' assertion that "CarePoint had a separate leave of absence policy and disciplinary procedure" and states "[n]o such policy or procedure is among the documents in the record."  (DSOF ¶ 32; PRSOF ¶ 32).

Viewing the evidence in the light most favorable to the non-movants on each motion, and given the disputed genuine issues of fact, neither motion is suitable for summary judgment.  *See Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988) ("Summary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party. . . .") (citations omitted).  Accordingly, the motions for summary judgment are denied.

---

[12] *See* n.10, *infra.*

IV.     **CONCLUSION**

For the reasons set forth above, Plaintiff's motion for summary judgment (ECF No. 101) and Defendants' cross-motion for summary judgment (ECF No. 102) are **DENIED**.  Plaintiff's request to take discovery under Fed. R. Civ. P. 56(d) is **GRANTED**.  The parties shall engage in limited discovery regarding whether: (1) Mary Mills, LPC ("Mills") is a "healthcare provider" and (2) Plaintiff has a "serious health condition" under the FMLA.

An appropriate Order accompanies this Opinion.

s/ Julien Xavier Neals
DATED: August 30, 2024                **JULIEN XAVIER NEALS**
United States District Judge